IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROSHAN SAH, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:16-CV-265-Y |
| | § | |
| LORIE DAVIS, Director,[1] | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Roshan Sah, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. Factual and Procedural History**

On January 14, 2013, in the Criminal District Court Number One, Tarrant County, Texas, Case No. 1272135D, Petitioner entered an open plea of guilty to murdering Linda Villanueva-Rodriguez, and, on April 1, 2013, following completion of a presentence

---

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is automatically substituted as the party of record.

investigation report, the trial court sentenced him to life imprisonment. (SH04 117-23, doc. 11-10.) Petitioner appealed, but the appeal was dismissed at his request. (Id. at 128.) Petitioner then filed a postconviction state habeas-corpus application raising the claim presented in this federal petition, which was denied by the Texas Court of Criminal Appeals. (Order, doc. 11-11.) This federal petition followed.

## II. Issues

In one ground, Petitioner claims his trial counsel was ineffective by falling to pursue the issue of sudden passion during the punishment phase of his trial. (Pet. 6, doc. 1.)

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither untimely nor subject to the successive-petition bar and that Petitioner has exhausted his claim in state court. (Resp't's Answer 3, doc. 12.)

## IV. LEGAL STANDARD FOR GRANTING HABEAS-CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened standard of review provided for in the AEDPA. See 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on

2

an unreasonable determination of the facts in light of the record before the state court. *See* 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102. The statute also requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. With these principles in mind, the Court considers Petitioner's claim.

## V. Discussion

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this test, a court must indulge a strong

3

presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Harrington,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner claims his trial counsel, David Richards, was ineffective by failing to pursue the issue of sudden passion during the sentencing phase of his trial. In an affidavit filed in the state habeas proceeding, counsel, an experienced criminal attorney, responded to the allegation as follows:

> I was retained by [Petitioner] to represent him in connection with the murder charge pending against him in Tarrant County Criminal District Court Number One in case no. 1272135. [Petitioner] confessed the murder to police

4

investigators as well as family, friends, and a psychologist whose services I retained to assist in his defense.

His victim was a young woman named Linda Villanueva-Rodriguez. In interviewing [Petitioner], subsequent to my hiring and following my investigation, it was agreed between us that he should enter an "open" (non-negotiated) plea to presiding Judge Sharen Wilson, rather than plead not-guilty or go open to a Tarrant County Jury. This decision was not made hastily and was the product of numerous discussions between [Petitioner] and myself and following discussions with Doctor James Womack, the psychologist.

The victim was shot twice in the head at close-range with a handgun purchased a few months before the murder by [Petitioner]. The shooting took place in a public parking lot outside the victim's residence. [Petitioner] admitted the shooting and the fact that he had repeatedly been stalking her after he believed she had deceived him by befriending but then ignoring him and ultimately telling him to "move on" after she told him she would not go on a date with him. [Petitioner] admitted the two had never been in a dating relationship and that he had never been in her apartment.

[Petitioner] had earlier been issued a criminal trespass warning and ordered to stay off the property where the victim had been employed, but had developed an obsession with her.

My strategy at trial was to convince the Judge that, although sane, [Petitioner] was mentally ill and was engaging in obsessive behavior (obsessing over unrequited love) at the time of the murder, but subsequently benefitted from counseling and medication he received while incarcerated, and in fact, that is what [Petitioner] testified to:

> DEFENSE COUNSEL: And you were blaming Linda for this [depression]?
>
> DEFENDANT: At that moment in my life, I might be blaming her, but - at this moment, after I feel a lot better (sic) about what happened in the past, and I feel like, you know, there can be only one explanation[,] that I was severely mentally ill, or

5

there must be some kind of supernatural evil forces guiding me to . . . [the event].

Because [Petitioner] admitted his obsessive stalking behavior was not the result of any unreasonable actions on the part of the victim, and because he had never been in even a dating relationship with her, I did not believe I should argue he had "adequate cause" to track her down, confront her, and shoot her in the head with a handgun. I believe that any objective reading of the presentence report and trial transcript supports my impression that he clearly provoked the confrontation with the victim, even if she earlier emailed him that she was involved sexually with someone else, and then later referred to him as a "black pig" and spit on him (he was of dark complexion, being of Nepalese descent).

When he was directly questioned by me at trial he repeatedly testified he "could not remember" whether he was calling her names at the time of the shooting, but as noted in the presentence report, he provided the investigating detective the following information:

"I am going to kill this bitch too, before I kill myself." (At trial, he testified that when she started screaming at him just prior to the shooting he had a "hallucination," and could not remember what he might have said).

I am a human being too, you can't play with my emotions.

I lost everything.

Try to do something for someone and they don't appreciate it.

She basically put me on [an emotional] rollercoaster.

I was so depressed I didn't know what to do.

I wanted to be sure she was dead.

She pissed me off.

I was trying to please her and everything.

He also stated, in explanation for why he killed her, if he had purchased the gun to commit suicide:

"I'm going to kill this bitch too, before I kill myself," and that **two days prior to the shooting** (the murder occurred on the afternoon of February 16, 2012) he decided to kill her and that "I was going to kill myself anyways, so why not two?"

I did not believe the issue now presented in his writ (whether he acted in sudden passion arising from adequate cause) was even close. It is my general trial strategy not to advance frivolous issues. I had hoped for a sentence in the midtwenties range, but the maximum sentence assessed by the judge did not surprise me.

(SH04 50-52, doc. 11-10 (record citations omitted).)

The Texas Court of Criminal Appeals considered and rejected Petitioner's claim. In so doing, the court relied on the following findings of fact and legal conclusions:

5. Hon. Richards did not present a sudden passion defense because he concluded that the facts did not support it.

6. [Petitioner] explained that he decided to kill the victim **prior to the murder** because "[he] was going to kill [himself] anyways, so why not two?"

7. There was evidence before the trial court that this was premeditated murder.

. . .

9. Hon. Richards' decision to not present a sudden passion defense was the result of reasonable trial strategy.

10. Hon. Richards hired a psychologist to examine Applicant.

11. Hon. Richards and [Petitioner] decided that [Petitioner] would plead open to trial court after numerous discussions between them and with Dr. James Womack, the psychologist.

12. [Petitioner] admitted to stalking and shooting the victim.

13. [Petitioner] admitted that he had developed an obsession with the victim.

14. Based on the evidence of the case, including Dr. Womack's examination and conclusion of [Petitioner]'s mental state, Hon. Richards concluded that the best strategy at trial was to argue that [Petitioner] was mentally ill and was engaging in obsessive behavior at the time of the murder.

15. Hon. Richards wanted to demonstrate to the court that [Petitioner] subsequently benefitted from counseling and medication.

16. Based on the evidence, and the fact that there was evidence the murder was premeditated, Hon. Richards' chosen trial strategy was the result of reasonable trial strategy.

17. In light of the fact that [Petitioner] admitted to law enforcement that the murder was premeditated, there is no reasonable likelihood that the result of the proceeding would have been different had counsel argued that [Petitioner] acted under the immediate influence [of] sudden passion.

18. Hon. Richards' affidavit is credible and supported by the record.

(Id. at 62-63 (Findings of Fact).)

7. "'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Tex. Pen. Code § 19.02(a)(2).

8. "At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a

felony of the second degree." Tex. Pen. Code § 19.02(d).

9. Because [Petitioner] had decided to kill the victim prior to the murder, counsel's conclusion that he was unable to prove by a preponderance of the evidence that [Petitioner] caused the death under the immediate influence of sudden passion was the result of reasonable trial strategy.

10. Based on the evidence before the trial court, counsel's decision to present a defense to minimize punishment that [Petitioner] was mentally ill at the time of the offense but had improved as the result of counseling and medication was the result of reasonable trial strategy.

11. [Petitioner] has failed to prove that counsel's representation fell below an objective standard of reasonableness.

12. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established. *See Washington v. State,* 771 S.W.2d 537, 545 (Tex. Crim. App.), *cert. denied,* 492 U.S. 912 (1989).

13. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. *If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.*" Strickland v. Washington, 466 U.S. 668, 697 (1984) (emphasis added).

14. Because the trial court had evidence that [Petitioner] decided to kill the victim prior to the murder, [Petitioner] has failed to show that there is a reasonable likelihood that the result of the proceeding would have been different had counsel presented a sudden passion defense.

9

> 15. [Petitioner] has failed to show that there is a reasonable likelihood that, but for the alleged acts of misconduct, the result of the proceeding would be different.
>
> 16. [Petitioner] has failed to prove that he received ineffective assistance of trial counsel.

(Id. at 64-66 (Conclusions of Law) (emphasis in original).)

Petitioner argues that (all spelling, grammatical, and/or punctuation errors are in the original)-

> as the Court of Criminal Appeals failed to adopt finding of fact number 8 of the trial court [which states "[t]he fact that there was evidence that this was premeditated murder would have precluded the trial court from finding that the murder was the result of an immediate influence or sudden passion"], petitioners murder was not premeditated and the trial court was not precluded from finding petitioner acted out of sudden passion. The state court acted unreasonable in denying this claim by despite his attorneys contentions any reasonable jurist would have seen the evidence supported a finding of sudden passion.

(Pet. 6, doc. 1.)

However, as determined by the Texas Court of Criminal Appeals, it is unlikely that a sudden-passion theory, if one had been raised by counsel, would have been successful under the facts of this case. That determination, which was based on state law and therefore not reviewable here, fully supports the Texas court's determination that counsel's strategic choice not to press the issue was neither objectively unreasonable nor prejudicial. *See Creel v. Johnson,* 162 F.3d 385, 390-91 (5th Cir. 1998). Counsel is not required to press legally meritless issues. *See Neal v. Cain,* 141 F.3d 207, 214-15 (5th Cir. 1998). Petitioner has not shown that

the state court's resolution of his ineffective-assistance claim was unreasonable under the doubly deferential standard applied to *Strickland* claims.

## VI. Conclusion

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, a certificate of appealability will not be issued. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of his constitutional claim. Therefore, a certificate of appealability should not issue.

SIGNED January 26, 2018.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE